25 F.3d 1053
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Marshall JACKSON, Plaintiff-Appellant,
v.
H. Christian DeBRUYN,** et al., Defendants-Appellees.
 No. 93-1809.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 28, 1994.*
Decided May 6, 1994.
 
 Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.
 
 Order
 
 1
 Marshall Jackson, formerly incarcerated at the Indiana State Farm, brought this civil rights action under 42 U.S.C. Sec. 1983 alleging that his continued confinement on administrative segregation in the prison's Maximum Restraint Unit violated the eighth and fourteenth amendments. The district court dismissed the complaint for failure to state a claim for relief, Fed.R.Civ.P. 12(b)(6), and Jackson appealed.[1]
 
 
 2
 We agree with the district court that nothing in Jackson's complaint suggests that the conditions of his confinement deprived him of the "minimal civilized measures of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Lunsford v. Bennett, 1994 WL 82662, * 3 (7th Cir. Mar. 16, 1994); see Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir.1992), and that Jackson received all the process due him while in administrative segregation. He received thirty-day periodic reviews. Hewitt v. Helms, 459 U.S. 460, 472, 476 (1983); Smith v. Shettle, 946 F.2d 1250, 1254-55 (7th Cir.1991). Written explanation for his continued confinement there was not necessary. Alston v. DeBruyn, 13 F.2d 1036, 1042 n. 2 (7th Cir.1994), citing Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir.1986). We accordingly affirm the dismissal of the complaint for the reasons stated by the district court in the attached order.[2] We add that Jackson's effort to recast his claim in equal protection terms fails, because he did not allege any "intentional or purposeful discrimination" on forbidden grounds. Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir.1982); Meriwether v. Faulkner, 821 F.2d 408, 415 n. 7 (7th Cir.1987).
 
 
 3
 AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 SOUTHERN DISTRICT OF INDIANA
 TERRE HAUTE DIVISION
 
 4
 Marshall Jackson, Plaintiff,
 
 
 5
 v.
 
 
 6
 James Aiken, John Nunn, D. Bruce Jordan, William Lundy,
 
 
 7
 James Hendrix, Rick Sobalick, Rod Grimes, Gary
 
 Hartsock, Karen Jones, Philip Badger, in
 
 8
 their individual and official
 
 
 9
 capacities, Defendants.
 
 Cause No. TH 91-216-C
 
 10
 ORDER GRANTING MOTION TO DISMISS AND DIRECTING ENTRY OF JUDGMENT
 
 
 11
 This cause is before the Court on the plaintiff's complaint, on the defendant's motion to dismiss and on the plaintiff's response to the motion to dismiss. For the reasons stated below, the Court finds that the motion to dismiss must be granted and the action dismissed with prejudice.
 
 Background
 
 12
 Plaintiff Marshall Jackson was until recently an inmate in the Maximum Restraint Unit (the MRU) at the Indiana State Farm (the ISF). He arrived at the ISF on January 7, 1988 and was placed in the MRU as part of the discipline imposed on him at the institution where he was previously confined. Upon completing the period of disciplinary segregation in January 1989, Jackson was retained in the MRU for administrative reasons. He remained there for a considerable period, during which his placement was reviewed at regular intervals. In consequence of this Jackson has brought the present action, contending that his retention in the MRU violates both the Eighth and Fourteenth Amendments. He seeks injunctive relief and damages from officials of the Indiana Department of Correction, the Superintendent of the ISF and numerous other ISF officials. It can be said that he was confined at the Indiana State Farm "until recently" because he has notified the Clerk in other litigation of his transfer to the Indiana State Reformatory.
 
 Analysis
 
 13
 The defendants have appeared by counsel and seek dismissal of the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on that motion, which the plaintiff has opposed, the Court liberally construes the plaintiff's allegations, accepts the allgations of his complaint as true and can dismiss the action at this stage only if it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the allegations in the complaint which would entitle him to relief. Perkins v. Silverstein, 939 F.2d 463, 466-67 (7th Cir.1991).
 
 
 14
 The first inquiry in every Section 1983 case is whether there has been the deprivation of a right secured by the Constitution or laws of the United States, for without a predicate constitutional violation one cannot make out a prima facie case under Sec. 1983. Juriss v. McGowan, 957 F.2d 345, 349 n. 1 (7th Cir.1992), citing Baker v. McCollan, 443 U.S. 137, 140 (1979).
 
 A. Eighth Amendment Claim
 
 15
 The Eighth Amendment, through the Fourteenth Amendment, prohibits states from inflicting cruel and unusual punishment upon prisoners. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991); Whitley v. Albers, 106 S.Ct. 1078 (1986). The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification. Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Jackson is well aware of the protections afforded by this provision of the Constitution. Jackson v. Duckworth, 955 F.2d 21 (7th Cir.1992).
 
 
 16
 The prong of this Amendment which Jackson relies on in the present case is the provision that he is entitled to be free from punishment grossly disproportionate to the severity of his crime. In invoking this provision, however, Jackson misperceives the nature of his confinement in the MRU. Segregated detention is not cruel and unusual punishment per se, as long as the conditions of confinement are not foul, inhuman or totally without penological justification. Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir.1984). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976). "Only deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 111 S.Ct. 2321, 2324 (1991), quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The conditions of the MRU, insofar as this complaint reveals, do not approach this magnitude.
 
 B. Fourteenth Amendment Claim
 
 17
 Jackson next asserts a procedural due process claim, based on his prolonged confinement in the MRU without benefit, he claims, of the procedures required by Indiana law. A specific methodology is used in assessing this claim:
 
 
 18
 We review procedural due process claims in two steps: we determine whether there was a deprivation or interference with a protected liberty or property interest, and then, whether the procedures attendant upon the deprivation or interference were constitutionally sufficient.
 
 
 19
 Forbes v. Trigg, 976 F.2d 308 (7th Cir.1992), cert. denied, 61 U.S.L.W. 3584 (February 22, 1993), citing Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Applying this methodology here, therefore, the first question to be addressed is whether Jackson suffered the deprivation of a protected liberty interest by his assignment to the MRU.
 
 
 20
 Liberty interests may originate in either the Constitution or state law. Castaneda v. Henman, 914 F.2d 981, 983 (7th Cir.1990), cert. denied, 111 S.Ct. 1085 (1991); Shango v. Jurich, 681 F.2d 1091, 1097 (7th Cir.1982). In Hewitt v. Helms, 459 U.S. 460 (1983), the Supreme Court held that the Constitution itself does not create a liberty interest in remaining out of segregation. According to the Court, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Id. at 467-68.
 
 
 21
 The inquiry thus shifts to whether Indiana law creates a liberty interest in remaining in a prison's general population or, what amounts to the same thing, whether a prisoner can be removed from the general population only under limited and specific circumstances. State law creates a protectable liberty interest when it "[places] substantive limitations on official discretion." Thompson, 109 S.Ct. at 1909 (quoting Hewitt v. Helms, 459 U.S. 460, 472 (1983)). This can be done "by establishing 'substantive predicates' to govern official discretion," and "mandating the outcome to be reached upon a finding that the relevant criteria have been met." Id. Thus, in analyzing the question, we must look to the relevant language of the statute or regulation to determine whether it is mandatory, or merely precatory, in nature.
 
 
 22
 The relevant Indiana statute is Ind.Code 11-10-1-7, which provides that
 
 
 23
 (a) An offender may be involuntarily segregated from the general population of a facility or program if the department first finds that segregation is necessary for the offender's own physical safety or the physical safety of others.
 
 
 24
 (b) The department shall review an offender so segregated at least once every thirty (30) days to determine whether the reason for segregation still exists.
 
 
 25
 In Lokmar Yazid Abdul-Wadood v. Duckworth, 860 F.2d 280, 283 n. 3 (7th Cir.1988), the Court of Appeals examined section (a) of the above statute and held that it "arguably" provides prisoners with a liberty interest in remaining in a prison's general population. In dictum, the majority in Smith v. Shettle, 946 F.2d 1250 (7th Cir.1991), found this language to be sufficient to support the creation of a liberty interest.
 
 
 26
 Were this the only source of authority to segregate inmates, they would have a liberty interest: the statute sets forth a closed list of criteria (two in number) one of which must be satisfied for segregation to be lawful; and the criteria establish a definite, administrable standard rather than leaving decision to the discretion of the prison officials. Reading such a statute a prisoner could reasonably say to himself, "I am entitled to remain in the general prison population unless my own safety or that of others would be endangered by my remaining there."
 
 
 27
 Id., 946 F.2d at 1252. The majority continued in its analysis:
 
 
 28
 No magic form of words is required to make a regulation mandatory; all that is required is that it be clear that if X (the substantive predicate), then Y (the specified outcome, from which the enforcement officials are not free to depart).
 
 
 29
 Id. at 1253, citing Wallace v. Robinson, 940 F.2d 243, 246 (7th Cir.1991) (en banc). However, the state's use of mere procedural guidelines, without more, will not create a liberty interest. See Kellas v. Lane, 923 F.2d 492, 494 (7th Cir.1991); Russ v. Young, 895 F.2d 1149, 1153 (7th Cir.1989). It should also be kept in mind that a "violation of state law is not itself the violation of the constitutional" guarantee to due process. Archie v. City of Racine, 847 F.2d 1211, 1217 (7th Cir.1988), cert. denied, 489 U.S. 1065 (1989). "There is neither a 'liberty' nor a 'property' interest in procedures themselves." Fleury v. Clayton, 847 F.2d 1229, 1231 (7th Cir.1988). Judge Coffey concurred in Smith, but did not find the formula of Thompson met by the Indiana statutes.
 
 
 30
 Proceeding from the majority's dictum in Smith, it may be assumed for the present that Jackson has a liberty interest in remaining free from administrative segregation absent certain findings. As in Smith, and following the method of analysis prescribed in such situations, the question now becomes whether Jackson was supplied with sufficient process to safeguard his liberty interest.
 
 
 31
 Jackson alleges in his complaint that he receives the periodic review required by Ind.Code 11-10-1-7(b), but that the substance of that review is entirely absent because his initial assignment to the MRU (being held over from a disciplinary sanction which was completed) was without reason. He attached to his complaint and added to his opposition to the defendants' motion to dismiss a variety of documents showing that such reviews were indeed conducted.
 
 
 32
 Smith reminds us that state procedural requirements do not define the contours of due process. 946 F.2d at 1254. Thus, whether Ind.Code 11-10-1-7(b) was complied with is, for the purpose of determining whether a viable claim is stated under Section 1983, immaterial. Instead, federal law prescribes what process is due and that, in Jackson's circumstances, is "some ongoing review of the status of inmates placed in administrative segregation." Id. (emphasis in original). The basis of this requirement is that confinement in administrative segregation can be indefinite--"keyed to changing conditions"--and should be subject to review to determine when it is no longer justified. Id., 946 F.2d at 1254-55. Here, the complaint itself demonstrates that Jackson has received ongoing review ... which apparently took him, in due course, from the MRU at the Indiana State Farm to an entirely different institution--the State Reformatory.
 
 
 33
 Jackson's transfer, of course, also impacts on his prayer for injunctive relief, which is precluded unless a plaintiff can demonstrate an ongoing injury or a threat of future injury. Absent such a showing, Jackson cannot satisfy the "case or controversy" requirement of Article III. Golden v. Zwickler, 394 U.S. 103, 109 (1969); Davis v. Mutual Liberty Ins. Co., 871 F.2d 1134, 1137 n. 3 (D.C.Cir.1989). This threat may not be purely speculative or contingent, but must be definite. Feit v. Ward, 886 F.2d 848 (7th Cir.1989). Jackson is no longer confined in the MRU at the State Farm and is no longer faced with confinement in the MRU. That portion of the complaint, therefore, is moot and must be dismissed for lack of jurisdiction. Air Line Pilots Ass'n Intern. v. UAL Corp., 897 F.2d 1394, 1396 (7th Cir.1990) (the test for mootness is whether the relief sought would make a difference to the legal interests of the parties, as distinct from their psyches, which may remain deeply engaged in the merits).
 
 Conclusion
 
 34
 The plaintiff, though an experienced litigator, is proceeding in this action pro se and is entitled to the general and liberal construction of his complaint. Haines v. Kerner, 404 U.S. 519, 520 (1972); Richardson v. Penfold, 839 F.2d 392, 394 (7th Cir.1988). Nonetheless, he is not immune from application of the Federal Rules of Civil Procedure and a persuasive challenge to his claims.
 
 
 35
 The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested, Illinois Health Care Ass'n v. Illinois Dept. of Public Health, 879 F.2d 286, 288 (7th Cir.1989), although dismissal may not be avoided by attaching bare legal conclusions to narrated facts which fail to outline the bases of the plaintiff's claims. Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir.1991).
 
 
 36
 There is no basis whatever for Jackson's claim that his confinement in the MRU violates his rights under the Eighth Amendment. As to his prolonged confinement in the MRU itself, Jackson has received the review to which he is entitled. The "constitutional purpose" of procedural due process " 'is to protect a substantive interest to which the individual has a claim of entitlement.' " Doe by Nelson v. Milwaukee County, 903 F.2d 499, 502-03 (7th Cir.1990), quoting Olim v. Wakinekona, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 1748-49 (1983). There is no further process to which he is entitled. It is, therefore, beyond doubt that Jackson's complaint fails to state a cognizable claim for relief and despite the high standard for dismissal pursuant to Rule 12(b)(6) under these circumstances the defendants have met that burden. The defendant's motion to dismiss is therefore GRANTED and judgment dismissing this cause of action with prejudice shall now issue, except that the plaintiff's prayer for injunctive relief, asserted against the defendants in their official capacities, shall be dismissed for lack of jurisdiction.
 
 
 37
 ALL OF WHICH IS ORDERED this 18th day of March 1993.
 
 
 38
 /s/ John Daniel Tinder
 
 JOHN DANIEL TINDER, Judge
 United States District Court
 Copies to:
 Marshall Jackson, # 11048
 Indiana State Reformatory
 P.O. Box 30
 Pendleton, Indiana 46064
 David A. Nowak
 Office of Attorney General
 219 State House
 Indianapolis, IN 46204-2794
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record
 
 
 **
 H. Christian DeBruyn is substituted for James E. Aiken in his official capacity as Commissioner of the Department of Corrections. Fed.R.App.P. 43. In his personal capacity, however, Aiken remains a party to this action
 
 
 [1]
 Jackson's contention on page six of his brief that he received no notice or opportunity to be heard prior to his initial placement in administrative segregation was raised for the first time on appeal and so is waived. Gray v. Lacke, 885 F.2d 399, 409 (7th Cir.1989)
 
 
 [2]
 The decision in Abdul-Wadood v. Duckworth, 860 F.2d 280 (7th Cir.1988), cited by the district court on page five of its order, was overruled in unrelated part by Wallace v. Robinson, 940 F.2d 243 (7th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1563 (1992)